61   613
132a  481

# CHARLES A. LEALE, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY and Another, Appellants.

*Elevated railways in New York — action not maintainable for the erection of a freight depot in a house near that of a property owner — evidence of the value of land.*

The complaint in an action alleged that the defendant, the Metropolitan Elevated Railway Company, maintained an elevated railway in Fifty-third street, in New York city, and a depot at the intersection of said street and Eighth avenue; that it had established a freight depot in a house upon said street next

but one to the house of the plaintiff, and that it had connected said depot and freight depot by a continuous platform built over the whole of the sidewalk beneath. The complaint demanded that the said defendant and its lessee, the Manhattan Railway Company, a co-defendant, be forever enjoined from operating said railroad adjoining and in front of plaintiff's premises, and from maintaining said station; it further demanded damages for past trespasses.

The court found "that, by reason of the construction and operation of said railroad, and of the depot and freight depot aforesaid," the rental value of the plaintiff's premises had been diminished $600, and the fee value $6,500, and directed that judgment be entered accordingly.

_Held_, that the defendants had a right to maintain a freight depot in the house next but one to that of the plaintiff, the same not being in the street nor upon any property subject to the plaintiff's easement.

That, inasmuch as it was impossible for the appellate court to discover what part of the recovery was predicated upon the erection of the freight depot, and how much thereof depended upon damages resulting from the operation of said railway in front of the plaintiff's premises, the judgment must be reversed.

That, upon the question of the value of said premises when plaintiff purchased, it was improper to allow him to state the prices at which similar property had, at about that time, been offered to him.

APPEAL by the defendants, the Metropolitan Elevated Railway Company and the Manhattan Railway Company, from a judgment, entered in the office of the clerk of the city and county of New York on the 2d day of December, 1890, after a trial at the New York Special Term, awarding the plaintiff damages, based upon the rental and fee value of his premises, and an injunction restraining the operation of the defendants' road unless such damages were paid.

_Samuel Blythe Rogers_, for the appellants.

_B. F. Dos Passos_, for the respondent.

INGRAHAM, J.:

The plaintiff alleges that defendant, the Manhattan Elevated Railway Company, has erected, constructed and maintains an elevated railroad and station at the intersection of Eighth avenue and Fifty-third street in front of plaintiff's premises, and that they also have established a freight station in a house or building next but one to the plaintiff's premises, and connected the aforesaid railroad station and the freight station by a continuous platform which covers or is built over the whole of the sidewalk ; and the complaint demanded judgment that each and both of the defendants be perpetually restrained and enjoined from maintaining, construct-

ing or operating the above-described railroad, and from maintaining and using the station at the corner of Fifty-third street and Eighth avenue, and for damages for the loss of rentals caused by the construction and maintenance of such railroad and station.

The court found the construction and maintenance of the railroad and station, and also made the following findings : " Tenth. That soon after the commencement and operation of said road, the defendants erected and established, and still use and maintain, a freight depot, in the building next but one to the plaintiff's premises and westerly therefrom, the platform of which said depot extends to within twenty feet of the plaintiff's house, and which said platform completely extends over the sidewalk below." " Seventeenth. That the annual rental value of said premises, by reason of the construction and operation of said railroad, and of the depot and freight depot aforesaid, has been diminished in the sum of $600 ; and that the fee value of said premises, by the same reason and causes, has been diminished in the sum of $6,500 ;" and, as conclusion of law, that plaintiff is entitled to recover from defendants the depreciation of the rental value of said property ; and that plaintiff is also entitled to recover from defendants damages in the sum of $6,500, for the depreciation of the fee value of the said premises ; and that plaintiff is entitled to an injunction restraining them from operating and maintaining the structure and railroad, running cars and engines and operating the same in front of plaintiff's premises ; and directed judgment that plaintiff recover from defendants the sum of $10,720.10, being the amount of the damage to the rental value to the premises, with interest and costs, with an injunction restraining the operation and maintenance of the railroad in front of plaintiff's premises, unless the defendants pay to the plaintiff the sum of $6,500, the amount of the depreciation of the fee of the plaintiff's premises.

The damage thus caused to the plaintiff's property is found by the court to be caused by the maintenance of the elevated railroad, and the depot and freight depot. Such freight depot has been found to have been established in the building next but one to the plaintiff's premises.

It is not in the street or upon any property that is subject to plaintiff's easement. There is no evidence in the case to show, nor

is there any finding that the employment or use of this building for a depot was illegal, or interferred in any other way with plaintiff's rights or property.

It is impossible for us to say how much of the total damage to the rental value of the property was caused by the maintenance and operation of the railroad structure in the street, and how much was caused by the maintenance of the depot in the building on the street, or how much of the $6,500 found by the court as the depreciation of the fee value of the property was caused by the elevated railroad structure or the depot.

So far as appears, the defendants who maintained the depot in the building had as much right to use their property for that purpose as the plaintiff had as to his property, and upon no principle can plaintiff recover damages caused to his property by reason of the use of the house or building for a depot either by the defendants or any other corporation.

Nor do I think that there is any evidence to justify the finding that these defendants maintained or operated the depot.

While the denial of the allegation as to the maintenance and operation of the depot is not very specific, I think it is sufficient to raise an issue as to whether defendants had established and maintained such freight depot in the building and the fact conceded by the defendants on the trial that freight and baggage was taken at No. 243 West Fifty-third street from the platform and put into a baggage car of the elevated railroad, and that it is hauled by an engine of the elevated railroad eight or ten times a day, that the car is laden and unladen there, and that the Manhattan Railroad derives a revenue from that business, with the limitation that it was not admitted that either of the defendants was concerned with the handling of the baggage or freight at that place upon their cars, is not an admission that the depot is operated and maintained by the defendants; and the testimony introduced by defendants shows that such depot is not maintained by the defendants, but by another corporation known as the New York City and Northern Railroad Company.

Plaintiff, on the trial, testified that at the time he purchased the property in question he made inquiry as to what neighboring property was held at, and as to efforts to purchase neighboring property

in Fifty-third street, immediately contiguous to his own property. He was then asked this question : " Q. Did you ascertain at that time what the property was held at ? " That question was objected to by the counsel for defendants as irrelevant, incompetent, immaterial and hearsay. The objection was overruled, to which the defendants excepted, and the witness answered : " I saw the owner of the prop. erty 235, a similar house to mine, and after seeing him two or three times the lowest price he would take for his house was $23,000." Counsel for defendants then objected to the answer and moved to strike it out on the ground that it called for the opinion of the witness, and also on the ground that it was hearsay. The motion was denied, and the evidence was admitted, to which the defendants excepted, and the witness continued his answer : " No. 237 was offered to me for $21,000." And the plaintiff was subsequently allowed to testify to interviews with the owners of both houses, Nos. 235 and 237, and offers made to him for the sale of such houses ; and the counsel for the defendants then objected to all of the foregoing questions and answers and the court admitted the same, to which the defendants excepted.

We think this evidence was all inadmissible and should have been excluded by the court. (See case of *Keller* v. *Paine*, 34 Hun, 167, and cases there cited.)

Without passing upon the other questions raised, for the reasons before stated, the judgment must be reversed, new trial ordered, with costs to appellants to abide the event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment reversed and new trial ordered, with costs to appellants to abide event.